## Majestic Life Assurance Company *v.* Tuttle.

[No. 8,435. Filed December 10, 1914. Rehearing denied February 16, 1915.]

1. Pleading.—*Answer.*—*Reply.*—*Sufficiency.*—A bad reply is good enough for a bad answer, so that the overruling of a demurrer thereto is not error. p. 105.

2. Insurance.—*Life Insurance.*—*Action on Policy.*—*Complaint.*— Where the complaint in an action on a life policy proceeded on the theory that plaintiff and the assured had performed all conditions of the contract, except such as had been specifically

waived by defendant, and that by reason of such waivers and defendant's course of conduct relative to extending the time of payment of premiums plaintiff and the insured were led to believe that defendant had waived its right to declare a forfeiture of the policy, etc., it was not open to the objection that it proceeded on two inconsistent theories.   p. 106.

3.   INSURANCE.—*Life Insurance.—Action on Policy.—Verdict.—Answers to Interrogatories.*—In an action on a life policy, grounded on the theory that defendant had waived its right to declare a forfeiture of the policy for delay in payment of the premiums as therein provided, answers by the jury to interrogatories were not inconsistent with the general verdict for the plaintiff, where it appeared therefrom that defendant's agent and bookkeeper in its home office looked after the particular policy and the payment of the premiums thereon by authority of defendant, that he had often extended the time of premiums and notes, and accepted payment of overdue premiums and notes, all of which was approved by defendant, and that by its conduct defendant held out that such agent had authority to make the extensions. p. 107.

4.   TRIAL.—*Verdict.—Scope and Effect.*—A general verdict for plaintiff is a finding in his favor on every material issue, and all reasonable inferences will be indulged in its support.   p. 107.

5.   INSURANCE.—*Life Insurance.—Forfeiture.—Waiver.*—The provisions of a life policy for its forfeiture for nonpayment of premiums, as well as a condition that no agent has authority to waive the requirement that premiums and premium notes must be paid at maturity, may be waived by the company; and it may be estopped to insist upon a forfeiture, if by its course of conduct the insured has been honestly led to believe that the premiums will be accepted after the appointed time.   p. 108.

6.   INSURANCE.—*Forfeiture.—Waiver.*—Forfeitures are not favored, hence circumstances which indicate an agreement on the part of an insurer to waive strict compliance with the terms of its policy, and which were acted upon in good faith, will constitute a waiver of the right to forfeit the policy, as where the insurer, knowing that there has been a default in the payment of premiums which would terminate the contract, enters into such negotiations with the insured as to indicate an intention to treat the contract as being in force and binding.   p. 108.

7.   INSURANCE.—*Premiums. — Extension of Time. — Consideration. —Estoppel.*—Even if an agreement, made after the maturity of notes given from time to time for unpaid premiums, for extension of the time of payment of the notes was without consideration, defendant insurance company would be estopped from in-

sisting on a forfeiture of the policy, where it failed to give the insured any notice of its intention to declare a forfeiture. p. 109.

8. INSURANCE.—*Premiums.*—*Extension of Time.*—An extension of the time for payment of a past due premium note to "corn gathering time", was for a time sufficiently certain. p. 110.

9. INSURANCE.—*Acts of Agent.*—*Ratification.*—The finding of the jury, based on evidence showing such facts, that defendant insurance company ratified the acts of its agent in extending the time of payment of premiums on the policy in suit and in accepting payment of past due premiums, precludes defendant from asserting that the acts of the agent were unauthorized. p. 111.

10. APPEAL.—*Review.*—*Instructions.*—Where an instruction was not mandatory and it appears that the court did not intend therein to instruct upon all matters of law involved, and it correctly stated the law upon the matters referred to, it was not erroneous, especially in view of another instruction covering the matter complained of as having been omitted. p. 111.

From Superior Court of Marion County (80,697) ; *Clarence E. Weir,* Judge.

Action by Olive I. Tuttle against the Majestic Life Assurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Frank S. Roby, Ward H. Watson, E. D. Salsbury, Sol H. Esarey, Edgar A. Brown* and *J. Olias Vanier,* for appellant. *Charles T. Hanna* and *Thomas A. Daily,* for appellee.

IBACH, J.—This was an action brought by appellee against appellant to recover on a life insurance policy issued to her husband and in which she was designated the beneficiary. The original complaint consisted of four paragraphs, a demurrer to the third was sustained, and after the evidence had all been introduced, the court instructed the jury to disregard the first and second, for the reason that the evidence did not support either of these paragraphs. The only paragraph of the complaint before us, therefore, is the fourth, wherein it is averred in substance that the policy of insurance covering the life of Elmer W. Tuttle was issued by the Majestic Life Insurance Company on April 16, 1906. On or about October 10, 1907, appellant, Majestic Life

Assurance Company, by agreement with said Majestic Life Insurance Company reinsured its risks, including the policy in suit. Said policy was issued in consideration of the payment of $39.90 and an agreement to pay a like sum to the insurance company on the 16th days of April and October of each year thereafter until twenty full year premiums had been paid. A copy of the policy of insurance was attached to the complaint as an exhibit. This policy provided for a grace of thirty days, after one year, in the payment of the semiannual premiums. As to the place of payment of such premiums the policy provided,

> "Premiums are paid at the home office of the company on or before the dates when due in exchange for an official receipt signed by the president or secretary, and countersigned by an authorized agent of the company. If any premium be not paid when due, the policy shall be void and all premiums forfeited to the company except as herein provided. * * * No condition, provision or privilege of this policy can be waived or modified in any case except by an indorsement hereon signed by the president or secretary. No agent has the power on behalf of the company to modify * * * this contract, to extend the time for paying premiums, to waive any forfeiture, or to bind the company by making any promises. * * *"

The defendant employed in its home office, collectors to collect premiums and otherwise assist in the conduct of its business, and they under the direction and with the knowledge and consent of defendant accepted payment of overdue premiums or promissory notes given in payment of or extending the time of payment of premiums, and they granted policy holders extension of time in payment of premiums or notes given in payment or extension of the time of payment of premiums. Elmer W. Tuttle paid to defendant's predecessor the semiannual premium due on April 16, 1906, on that date; the semiannual premium due October 16, 1906, he paid on December 8, 1906; that due on April 16, 1907, he paid on April 26, 1907, and all of which payments were

accepted by the company, that of October 16, 1906, being paid to and accepted by the vice president of the Majestic Life Insurance Company long after it was due.

October 10, 1907, was the date on which the Majestic Life Assurance Company reinsured the risks of the Majestic Life Insurance Company, including the policy in suit, and the insured paid the semiannual premiums to the assurance company on the following days: the payment due October 16, 1907, on November 13, 1907; that due on April 16, 1908, was paid to one of defendant's collectors on that day by the execution of a note accepted by defendant in the principal sum of $34.70 payable in 120 days, and at the same time defendant delivered to insured its receipt providing that "should this premium be paid by check or note and said check be not paid on presentation, or be not paid on maturity, then the policy herein becomes lapsed, and all premiums paid on its account shall be forfeited to the company as provided in the policy." The note above mentioned was paid to a collector on December 12, 1908, after it was overdue, and was accepted by the company. The premium due October 16, 1908, was paid to a collector on November 16, 1908, which was one day after the time of grace allowed had expired, by the execution of a promissory note accepted by defendant, in the usual form, and containing this provision,

"I understand and agree with the Majestic Life Assurance Company that in consideration of its acceptance hereof, the time of payment of said premium is extended until the maturity of this note, at which time all rights and benefits secured by said policy shall cease and determine without notice and said policy shall be null and void, subject, however, to the provisions in said policy contained, it being understood that failure to pay this note at its maturity shall have the same effect as failure to pay the premiums as required in said policy. I further agree that this note is not in payment for life insurance or of any premium, but that it is exclusively an extension of the time of payment of the premium above referred to; and the non-

payment upon said policy of insurance shall not impair the obligations of this note, but the same shall become due and payable for the proportion of its face and interest that the period for which said premium is hereby extended bears to the whole time covered by said premium. E. W. Tuttle.''

An official receipt was then delivered to the insured similar to the one given on April 16, 1908. This note was not paid at maturity, but in lieu thereof Tuttle executed and delivered to one of defendant's collectors another promissory note dated May 17, 1909, becoming due August 1, 1909, and calling for the sum of $35.64, the amount of the premium due and payable on October 16, 1908, which note contained the same agreement as to extension above set out.

The semiannual premium due April 16, 1909, was likewise paid to one of defendant's collectors by the execution of a promissory note for $33.90, dated May 17, 1908, due August 1, 1909, which note defendant accepted. This note also contained a provision similar to that set out above as contained in the two before-mentioned notes. At the same time defendant delivered its official receipt to insured, which likewise contained the same provisions as to forfeiture as the receipts above mentioned. Said last two notes were not paid at maturity, and on August 12, 1909, plaintiff received from defendant a letter as follows:

''Under recent date we advised you that your note in amount $35.64 with .45 interest, also your other note in amount $33.90, with .43 interest would fall due Aug. 1st, '09. We presume that you have overlooked this matter, however, we will thank you to let us have remittance to cover and oblige.

Jy-Bm        Yours truly, Majestic Life Assurance Co.''

Subsequent to the receipt of this letter one of defendant's collectors called on assured, produced the notes and requested payment from him. It was then agreed that the time of payment might be extended until the corn on plaintiff's farm was gathered and marketed. The notes were then

returned to the home office where they remained until the filing of this complaint.

By the course of defendant's conduct in accepting overdue payments of premiums and overdue payments of notes given in payment of premiums said Tuttle was honestly led to believe from the time of said agreements until his death that his policy was in force and that defendant would accept payment of the notes at the time agreed upon. It is also averred that the defendant by its action above set out waived the conditions as to the extension of time of payment of premiums and of forfeiture whether contained in said policy, said receipts or said notes and at no time was the insured or the beneficiary informed that the policy had been forfeited until after the death of the insured, and that in fact the policy had never been forfeited. The assured died on October 25, 1909, while this policy, by reason of the said payments and agreements, was in force. A request for proper blanks for proof of death was made of defendant, but it denied liability, and refused this request. The said insured and the beneficiary each performed all the conditions of the policy required of each to be performed, and a judgment for $2,000 and interest was demanded. A demurrer to this complaint for want of facts sufficient to constitute a cause of action was overruled, and this action of the court is challenged.

The defendant's answer was in two paragraphs, the first a general denial. In the second the execution of the policy of insurance and the reinsurance thereof is admitted, and it avers the insured paid the premiums according to the terms of the policy up to and including the premium due April 16, 1908, but denies that any other premiums were paid and sets out the clauses in the policy regarding the payment of premiums and forfeiture of the same as the one set out in the complaint. It is then averred that the insured executed to defendant his promissory note dated November 16, 1908, instead of paying the premium due October 16, 1908, the

substance of which averment appears also in the complaint. That on May 17, 1909, insured was notified that the policy had been canceled and at his request the time for the payment of the premium due April 16, 1909, and the time for the payment of the note dated November 16, 1908, was extended to August 1, 1909, and that the insured executed two notes, one for the amount of the November unpaid note and one for the premium falling due April 16, 1909, being the same notes referred to in the complaint. The additional averment is that these notes were accepted by defendant not in payment of said premiums, but were for an extension of time for the payment of these past due premiums, that neither of the notes was paid when due, and that by reason of the terms of the policy it then and thereby became forfeited, and was of no value at the time of the assured's death.

Plaintiff's reply to this answer admits the execution of the notes referred to therein and says that the semiannual premium falling due October 16, 1908, was partly paid by a cash dividend, and that such notes in question were accepted by defendant in full payment of the balance of the premium, and further it is averred that other premiums were so paid by the application of dividends. Also when the notes representing the semiannual premiums due October 16, 1908, and May 17, 1909, were executed a receipt was given to insured, a copy of which we have referred to in the complaint. After the notes fell due the defendant elected to continue the policy in force, retained possession of the notes, demanded payment in full with interest, and thereby waived the forfeiture clause contained in the policy, the notes and the receipts. This reply does not fully controvert the answer, in that it does not aver that the conditions in the policy were waived, but neither does the answer controvert the complaint. A bad reply is sufficient for a bad answer, and the court did not err in overruling the demurrer to the reply. Under the issues

thus formed there was a jury trial resulting in a verdict for appellee for $2,217.

With the general verdict, answers to a number of interrogatories were returned, and over appellant's separate motions for judgment on these answers and for a new trial, judgment was rendered for appellee on the verdict. The errors assigned and argued call in question the rulings of the court on the demurrer to the complaint, on the motion for judgment on the answers to the interrogatories and on the motion for a new trial, on the grounds that the verdict is not sustained by sufficient evidence, that there was error in giving instruction No. 24 on the court's own motion, and in refusing to give a peremptory instruction to find for defendant.

It is contended that the complaint is insufficient because it appears from its averments that appellee was seeking to recover on two inconsistent theories, and that the 2. averments concerning waiver were in the alternative, that there are no allegations to show that the obligations upon the assured were waived either by ratification or estoppel, or that the collector had any authority to waive any of the conditions of the policy. The portion of the complaint alleging an agreement to extend the time of payment of the past due extension notes "until the corn on plaintiff's farm be gathered and marketed" is insufficient to show waiver of the time of payment because no consideration for such agreement appears and no definite time of payment was fixed in such agreement. It is quite apparent that the complaint proceeds upon the single theory that the assured and appellee had performed all the conditions required of them by the terms of the contract, except those which had been specifically waived by appellant, whether such provisions were contained in the policy, the receipts or the notes and that by reason of such waivers and the conduct of appellant in relation to the payment of premiums, assured and appellee were honestly led to believe up to the time of assured's death that appellant had waived its right to declare

a forfeiture of the policy by reason of any default on the part of the assured, and that the policy was in full force and that appellant would accept payment of the extension notes at the expiration of the extended time for payment. Construing the complaint as an entirety, we are satisfied that it is not open to the objections urged.

Under the second specification of error, appellant urges that the answers to the interrogatories returned with the general verdict do not show a waiver of the forfeiture clauses contained in the several instruments involved here, either by ratification or by estoppel, and for that reason the answers are in irreconcilable conflict with the general verdict and must control.

By its special verdict the jury found that the representative of appellant who conducted the dealings with insured was its agent and bookkeeper in its home office, that he had looked after this particular policy and the payment of premiums, by the authority of appellant he had many times extended the time of payment of premiums and notes and accepted payment of overdue notes and premiums and that such agent reported his actions when concluded to the company and his dealings with the insured were approved including the acceptance of the last two extension notes and the agreement to extend the time of payment until the corn on assured's land was gathered and marketed, and it is further found that by the previous conduct on the part of appellant and its representatives there was a holding out or representation that such agent had full authority to make such extension of time for the payment of the notes in suit. The general verdict is a finding for appellee on every material issue in the case and all reasonable inferences will be indulged to support such verdict. Applying this well known rule to the present case, we are satisfied that the special answers are in support of rather than in conflict with the general verdict.

The facts found by the jury being substantially the same

as those averred in the complaint, and proven at the trial we will proceed to consider the case with relation to its legal aspect. The terms of the policy in suit are such that a failure to pay the extension notes at maturity would operate to forfeit the policy the same as a failure to pay the premiums at the times fixed, and the undisputed evidence shows a default by the insured in both respects, so that there can be no recovery unless the appellant with full knowledge of all the facts and circumstances further extended the time of payment and waived its right to rely upon the forfeiture clauses contained in its policy. It is well settled that the provisions in an insurance policy providing for its forfeiture for nonpayment of the premiums are for the insurer's benefit, and may be waived. 2 May, Insurance (4th ed.) §360; *Home Ins. Co.* v. *Gilman* (1887), 112 Ind. 7, 13 N. E. 118. A condition in the policy that an agent has no authority to waive the requirement that premiums and premium notes be paid at maturity, may also be waived. 1 Joyce, Insurance §439; *Metropolitan Life Ins. Co.* v. *Johnson* (1912), 49 Ind. App. 233, 244, 94 N. E. 785, and cases cited. Another legal principle involved here is that "an insurance company will be estopped to insist upon a forfeiture, if, by any agreement, either express or implied by the course of its conduct, it leads the insured honestly to believe that the premiums or assessments will be received after the appointed day." *Workingmen's, etc., Assn.* v. *Leverton* (1912), 178 Ind. 151, 153, 98 N. E. 871; See, also, 2 May, Insurance (4th ed.) §361. Again, forfeitures "are not favored in law; and courts, in order to avoid the odious results of a forfeiture, are not slow in seizing hold of such circumstances as may have been acted on in good faith, and which indicate an agreement on the part of the company, or an election, to waive strict compliance with the conditions and stipulations in the policy." *Michigan Mut. Life Ins. Co.* v. *Custer* (1891), 128 Ind. 25, 29, 27 N. E. 124. See, also, *Temple* v.

*Muncie Lodge, etc.* (1912), 50 Ind. App. 324, 333, 335, 97 N. E. 546; *Moreland* v. *Union Cent. Life Ins. Co.* (1898), 104 Ky. 129, 46 S. W. 516; *Union Cent. Life Ins. Co.* v. *Duvall* (1898), 46 S. W. (Ky.) 518. So the rule applicable to cases like the present may be thus stated, if the insurer knowing that a default has occurred in the payment of premiums on its policy which would terminate such contract, enters into such negotiations with the assured as indicate an intention on the insurer's part to treat the insurance contract as being in force and binding on the parties, the right to claim the forfeiture for such default is lost. We are convinced from all the facts shown at the trial that appellant's conduct was such as would naturally lead the insured to believe that payment of the notes given for an extension would be accepted after August 1, 1909, at the time agreed, namely, when insured's corn should be gathered and marketed, and that the policy was in force at the hour of his death.

But appellant insists that inasmuch as the agreement claimed by appellee as the agreement for extension of the notes was made after their maturity, there was no 7. consideration for the extension or waiver relied upon here. However, if such contention was conceded, a waiver need not necessarily be supported by a valuable consideration but may become operative by way of an estoppel, and under the evidence appellant must be held to be estopped to insist upon a forfeiture of the policy, for it nowhere appears that prior to a declaration of forfeiture it gave the insured a notice of any kind of its intention to do so. *United Firemen's Ins. Co.* v. *Thomas* (1897), 82 Fed. 406, 27 C. C. A. 42, 47 L. R. A. 450; *Knickerbocker Life Ins. Co.* v. *Norton* (1877), 96 U. S. 234, 24 L. Ed. 689. After the last extension note became due, and on August 12, 1909, appellant made an effort to collect the full amount of the two extension notes due August 1, 1909, whereas, if appellant was relying upon the forfeiture clause, which it had a right

to do, it would be entitled only to a proportionate part of such notes. Later an agreement was entered into between appellant's representative and the insured, whereby the latter was to pay in full these notes when his corn was gathered and marketed, and appellant was to accept such payment. These facts, when taken in consideration with the previous course of business established between the parties, whereby appellant had previously accepted past due premiums from the insured, are sufficient to lead assured to believe that the forfeiture had been waived, and that the insurance was carried forward to the next premium payment period, October 16, 1909, and as there were thirty days of grace for the payment of the premium then falling due, the insurance was in force at the time of his death. We hold that the conduct of appellant was such that it was estopped after insured's death to assert a forfeiture of his policy for the nonpayment of the premiums. Unquestionably, had appellant received and accepted payment in full of the extension notes after they were due, it could not be heard to assert a forfeiture because these notes were not paid before due, and having agreed to accept payment of these notes at a future date, and led insured to believe that his policy was thereby still in force, it is in the same position as if the notes had been actually paid when the agreement for extension to corn gathering time was made.

Neither is the time for extension (to corn gathering time) too indefinite, the language used expressing a time of sufficient certainty, although a precise date is not fixed.

8. In a case where a very similar question was presented, our Supreme Court said, "The arrangement made between Custer and the agents of the company was made with reference to this tile season. It was not necessary that the contract for extension should be to a precise date." *Michigan Mut. Life Ins. Co.* v. *Custer, supra*, 33.

The evidence further shows and the jury finds that the acts performed by appellant's agent were authorized by

appellant, and that it authorized him to grant indulgence in the notes last accepted. It then ratified all that was done in its behalf. It can not now successfully contend that such agent had no authority to do what it has clearly ratified, and what it repeatedly permitted him to do, notwithstanding the language of the several written instruments involved in the various transactions with the insured. *Union, etc., Ins. Co.* v. *Whetzel* (1902), 29 Ind. App. 658, 665, 65 N. E. 15, and cases cited; *New York Life Ins. Co.* v. *Evans* (1910), 136 Ky. 391, 124 S. W. 376; *Williams* v. *Empire, etc., Life Ins. Co.* (1910), 8 Ga. App. 303, 68 S. E. 1082.

From what we have said it is apparent that the court did not err in refusing either to direct a verdict for appellant or to enter judgment in its favor on the answers to the interrogatories or in refusing to grant a new trial on account of the insufficiency of the evidence.

By instruction No. 24 the jury was told that before appellee could recover by reason of the course of dealing between appellant and decedent, Elmer W. Tuttle, whereby it is alleged that decedent was led to believe that his rights under the policy in question would not be forfeited by reason of his failure to pay the notes given to appellant for the purpose of extending the time of payment of premiums due on said policy on October 16, 1908, and April 16, 1909, she must show by a fair preponderance of the evidence, (1) that by reason of this course of dealing the insured was justified in believing that appellant would not insist upon a forfeiture for his failure to pay the notes when due, (2) that insured actually believed that he could postpone the payment of his premiums or the notes given extending the time of payment of premiums after maturity, without risk of forfeiture. This instruction was applicable to at least a portion of the evidence in the case. It is not a mandatory instruction, and does not bear that construction. It is quite apparent that the court did not

intend therein to instruct the jury upon all matters of law necessary for the information of the jury, and as to the particular matters referred to, the law was correctly stated. The instruction might have been fuller, but it is not for that reason erroneous. Also, in another instruction given by the court, the jury was told that insured must not only have believed that he could postpone the payment of his premiums or notes without forfeiture, but must also have acted upon such belief.

Judgment affirmed.

NOTE.—Reported in 107 N. E. 22. As to when acts and knowledge of agents prevent forfeiture, see 9 Am. St. 236; 26 Am. Rep. 370. Waiver of provision in life insurance policy as to time of payment of premiums by acceptance of premium after appointed time or similar acts. See 7 Ann. Cas. 385. See, also, under (1) 31 Cyc. 338; (2) 25 Cyc. 916; (3) 25 Cyc. 954; 38 Cyc. 1957; (4) 38 Cyc. 1902; (5) 25 Cyc. 858, 861; (6) 25 Cyc. 868; (7) 25 Cyc. 870; (8) 7 Cyc. 597; (9) 25 Cyc. 954; (10) 38 Cyc. 1598.